FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 19 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PATRICK OCHION JEWELL
A/K/A "OCHION JEWELL",

OPINION AND ORDER
16-cv-1587 (NG) (PK)

Plaintiff,

- against -

MUSIC LIFEBOAT, PASADENA ARTS
COUNCIL, BRANDON BERNSTEIN,
TERRY CARTER, AND SCOTT LORING,

Defendants.
-------------------------------------------------------------x

GERSHON, United States District Judge:

Plaintiff Patrick Ochion Jewell alleges copyright infringement pursuant to the Copyright Act, 17 U.S.C. §§ 101–810, as well as New York common law claims of breach of contract and misappropriation of ideas. Plaintiff's claims arise out of an alleged agreement he entered into with defendants Bernstein, Carter, and Loring in which he agreed to provide a music education curriculum for a music educational mobile application ("app") in exchange for a 10% ownership stake in the company to be created and 10% of the company's profits. Music Lifeboat is the website that operates the app, and plaintiff alleges that Music Lifeboat is a "project" of the Pasadena Arts Council. Plaintiff seeks declaratory and injunctive relief, actual damages, statutory damages, costs, and reasonable attorney's fees. All defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and, pursuant to Rule 12(b)(2), for lack of personal jurisdiction over them. They also move to dismiss under Rule 12(b)(3) and 28 U.S.C. § 1406(a) on the basis that venue is improper in the Eastern District of New York; in the alternative, they

seek transfer of any surviving claims to the Central District of California pursuant to 28 U.S.C. §§ 1404 and 1406.

For the reasons set forth below, this court does not have personal jurisdiction over defendants Music Lifeboat, Inc. and the Pasadena Arts Counsel, and therefore venue in this district is improper as to those defendants. I therefore transfer the claims against Music Lifeboat and Pasadena Arts Council to the Central District of California pursuant to 28 U.S.C. § 1406(a). Rather than continue the case piecemeal, I also transfer the remaining claims against defendants Bernstein, Carter, and Loring to the Central District of California pursuant to 28 U.S.C. § 1404(a). I do not reach defendants' arguments for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PLAINTIFF'S ALLEGATIONS

The allegations of the Amended Complaint, taken as true for purposes of this decision, are as follows. In January of 2014, plaintiff, who is a musician and composer, conceived of an app to teach children to play band instruments. Plaintiff discussed this idea with defendants Brandon Bernstein, Terry Carter, and Scott Loring. It was plaintiff's understanding that a for-profit company would be formed based on the app. In exchange for plaintiff providing curriculum for the app, he would receive 10% ownership of the company and 10% of the company's profits. This agreement was outlined in a February 16, 2014 two-sentence email from defendant Bernstein.

Though defendants promised a full written agreement, they demanded that plaintiff create and provide them with a curriculum for the lessons on the app, despite not having provided plaintiff with this agreement. Plaintiff refused to provide any material until he received the agreement, which he eventually received on March 20, 2014. However, the agreement was deficient in numerous ways, including its lack of clarity as to who owned the intellectual property to plaintiff's creations. After raising his concerns with defendants, they promised him a revised agreement, but

2

pressured plaintiff into providing them content prior to receiving the new agreement because they had already hired professional musicians and booked studio time to record the instructional videos for which they needed plaintiff's lesson plans.

On March 30, 2014, plaintiff provided the content to defendants before receiving a revised agreement, which defendants then used to create instructional videos. From January of 2014 to September of 2014, plaintiff continued to work with defendants. Plaintiff provided additional ideas for the app, supervised software and game designs, was filmed as an instructor for certain lessons, and composed both an original song and theme music for the app's trailer.

Though the parties originally intended to create a for-profit company based upon the app, in September of 2014, defendants decided to create a not-for-profit company and to release the lessons to the public for free. Nonetheless, plaintiff maintains that defendants promised that he would retain a 10% ownership stake in the company and that he would be compensated for his contributions. On September 20, 2014, plaintiff submitted his curriculum to the United States Copyright office for registration, which he received on October 20, 2014. In December of 2014, plaintiff received a letter from defendants stating that they were moving forward with incorporating the not-for-profit company and that they were willing to pay plaintiff $5,000 for his work, of which defendants would become the exclusive owners. Plaintiff refused to sign the agreement.

On or about October 21, 2014, Bernstein, Carter, and Loring co-founded Music Lifeboat, Inc. Music Lifeboat is a project of the non-profit Pasadena Arts Council, which provides fiscal management and oversight of Music Lifeboat's operations, and collects all revenue generated by Music Lifeboat. Music Lifeboat operates a website, www.musiclifeboat.org, as well as a mobile application called "Bandblast" and separate applications called "Music Lifeboat Presents: Play

Like a Prodigy" for twelve different instruments (the "Play Like a Prodigy series"). Both the website and the applications allow users to stream video lessons incorporating plaintiff's copyrighted lesson plans. A trailer for the Bandblast app posted on another website incorporates another of plaintiff's copyrighted works, "Theme for Strings." The apps became publicly accessible in February of 2016, and offer over 100 videos incorporating plaintiff's copyrighted curricula for purchase. Defendants thus are selling plaintiff's copyrighted work, and have never at any point compensated him.

As it relates to jurisdiction, plaintiff alleges that all defendants reside or have their principal places of business in California, and does not argue that any defendant would be subject to general jurisdiction in New York. Plaintiff asserts, however, that defendants are subject to specific jurisdiction in New York regarding this matter under New York's long-arm statute based on their actions, which he describes in the Amended Complaint. Those actions include:

1. Seeking out plaintiff, a NY State resident, and contracting with him to provide the curriculum for the video lessons;

2. Communicating with plaintiff via email, phone, and social media for over nine months concerning plaintiff's creation of copyrighted works for use in the planned business venture;

3. Obtaining and using plaintiff's copyrighted works, which they knew plaintiff had created while in NY State;

4. Requesting that plaintiff hire game designers and music composers in New York State to work on the project, which plaintiff did;

5. Paying those New York residents, including game designers, consultants, and composers, to provide content for the Music Lifeboat website and/or the mobile apps, and knowingly using content that those New York residents wrote and developed in NY State;

6. Engaging in email, phone, and social media communications with those New York-based game designers, consultants, and composers;

7. Deriving substantial revenue from infringing on plaintiff's copyright within the State of New York by publicly distributing plaintiff's copyrighted video lessons through their website and related mobile apps, with knowledge that such content would be downloaded or viewed in New York;

8. As to defendant Bernstein only, coming to New York on at least two occasions to meet with plaintiff and discuss plaintiff's work and meet with other individuals who worked on Defendants' mobile apps.

## DISCUSSION

### I. Standard of Review

Where, as here, a court relies solely on the submissions of the parties in ruling on a motion to dismiss for lack of personal jurisdiction, plaintiff need allege only "facts sufficient to demonstrate a *prima facie* showing of jurisdiction . . . by way of the complaint's allegations, affidavits, and other supporting evidence, which are evaluated in the light most favorable to [plaintiff]." *Williams v. Preeminent Prot. Svcs.*, 81 F. Supp. 3d 265, 269 (E.D.N.Y. 2015).[1]

The Second Circuit has set forth a two-part test for determining whether a plaintiff has made a *prima facie* showing that this court has jurisdiction over non-domiciliary defendants. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). "First, [the court] must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Id.* "Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Chatwal Hotels & Resorts, LLC v. Dollywood Co.*, 90 F. Supp.3d 97, 108 (S.D.N.Y. 2015); *see also Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61

---

[1] The parties agreed at the pre-motion conference to address the jurisdictional issues without a hearing. Each side submitted declarations.

5

(2d Cir. 2012); *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 296 (E.D.N.Y. 2013)).

## II. Personal Jurisdiction

New York extends personal jurisdiction over non-domiciliaries under two statutes: CPLR §§ 301 (general jurisdiction) and 302 (specific jurisdiction). Plaintiff does not contend that defendants are subject to general jurisdiction, and instead relies on CPLR §§ 302(a)(1)-(3). Those CPLR sections provide that a court may exercise personal jurisdiction over any non-domiciliary who:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> (2) commits a tortious act within the state . . .;
>
> (3) commits a tortious act without the state causing injury to person or property within the state . . ., if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

### A. CPLR § 302(a)(1)

In order for Section 302(a)(1) to be met, "first, the non-domiciliary must 'transact business' within the state; second, the claim against the non-domiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *see also Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 2009). A non-domiciliary transacts business in New York only when he "purposefully avails himself of the privilege of conducting activities within New York thus invoking the benefits and protections of its laws." *CutCo Indus., Inc.*, 806 F.2d at 365. Plaintiff argues that defendants transacted business in New

6

York in two ways: (1) by projecting themselves into New York to engage in a sustained and substantial transaction of business related to the development of mobile apps which infringe plaintiff's copyrights, and (2) by operating interactive mobile apps that infringe plaintiff's copyrights and transmit goods and services to users in New York.

### 1. Jurisdiction Based on a Sustained and Substantial Transaction of Business in New York

Plaintiff's first basis for jurisdiction has merit, but not for all five defendants. Plaintiff's strongest jurisdictional argument is against defendant Bernstein. In or around January of 2014, Bernstein sought out plaintiff, a New York resident, and entered into an agreement to have plaintiff develop content in exchange for a percentage of a not-yet-formed company. It was Bernstein himself who sent the email to plaintiff that forms the basis of plaintiff's breach of contract claim. (Am. Compl. ¶ 45.) He also hired other New York residents, identified by plaintiff as Margaret Robertson, Eddie Cameron, Qasim Naqvi, Sarah Bernstein, and Aaron Shragge to work on the project. Bernstein knew that a great deal of the content for the mobile apps he would own was being created in New York, and that it was being created over a series of nine months, from January 2014 through September 2014. (Am. Compl. ¶¶ 37–38, 47); (Decl. of Pl. in Opp. ("Jewell Decl."), ¶¶ 11–12, 17–21, 30–31, 37.) Bernstein, along with Carter and Loring, exchanged "over 600 e-mails with the Plaintiff and the other New York residents hired to do work related to the BandBlast app." (Jewell Decl. ¶ 22.) Finally, Bernstein came to New York at least twice to meet with plaintiff and others working on the project. (Jewell Decl. ¶ 22; Am. Compl. ¶¶ 34–35.)

Bernstein "hired [plaintiff] knowing that [he] would live and work in Brooklyn, and 'continued [his] communications with plaintiff here' for a sustained period of time, thereby engaging in the kind of 'independent activities' in the state that render long-arm jurisdiction appropriate." *Williams*, 81 F. Supp.3d at 271 (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 382–

83 (2007)). Defendants argue that the *only* nexus to New York in this case is that the Plaintiff happens to reside here, but that is not the case. Defendant Bernstein in essence hired a group of New York residents to develop the content for his company. In so doing, he "purposefully avail[ed] himself of the privilege of conducting activities within New York thus invoking the benefits and protections of its laws." *CutCo Indus., Inc.*, 806 F.2d at 365.

As to defendants Carter and Loring, plaintiff does not allege that they were ever physically present in New York. But, "even when physical presence is lacking, jurisdiction may still be proper if the defendant 'on his own initiative . . . project[s] himself' into this state to engage in a 'sustained and substantial transaction of business.'" *Fischbarg*, 9 N.Y.3d at 381–82; *see also Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 19 (1970) ("mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the jurisdiction of our courts"); *Golden Archer Investments v. Skynet Financial Systems*, 2012 WL 123989 at *4 (S.D.N.Y. Jan. 3, 2012) ([w]hen a defendant's remote communications effectuate some purposeful business in New York, personal jurisdiction will be found."). Defendants Loring and Carter are, like Bernstein, alleged to have engaged in consistent and continuous communications with plaintiff for over nine months regarding his work on this project. (Am. Compl. ¶ 32.) They also distributed content created by plaintiff and other New York residents through Music Lifeboat, which they co-founded with Bernstein. (Am. Compl. ¶¶ 23–24, 45.) Their sustained business relationship with the plaintiff and other New York residents is sufficient for long-arm jurisdiction to attach.

Unlike the individual defendants, however, defendant Pasadena Arts Council has not transacted any business in New York. Plaintiff alleges that the Pasadena Arts Council entered into the "Fiscal Sponsorship Contract" with defendants Bernstein and Carter, on behalf of Music

Lifeboat, on October 21, 2014. (Am. Compl. ¶ 17.) There is no allegation of any involvement by the Pasadena Arts Council prior to that date, which was when any promises that were made to plaintiff about his compensation by the individual defendants would have been made. Since that date, plaintiff alleges the Pasadena Arts Council has managed and overseen Music Lifeboat's operations and funds, collected incoming funds and controlled outgoing funds, overseen fundraising, grant applications, and expenditures for Music Lifeboat, and provided marketing and fundraising support for Music Lifeboat. (Am. Compl. ¶ 18.)[2] Notably, none of those activities involve plaintiff or Music Lifeboat's use of plaintiff's copyrighted works—or indeed involve Music Lifeboat's content in any way. The letter that plaintiff alleges was sent to him offering him $5,000 for his work, which plaintiff refused to sign, was not sent on behalf of Pasadena Arts Council. (Am. Compl. ¶ 61.) The Pasadena Arts Council has not projected itself into New York to engage in a sustained and substantial transaction of business relating to plaintiff's allegations merely by processing donations and overseeing marketing and fundraising support for a website whose operations plaintiff does not allege that it directs or controls.

Finally, Music Lifeboat has not transacted business in New York. As an initial matter, Music Lifeboat was incorporated on or about October 21, 2014. (Am. Compl. ¶ 63.) A corporation's pre-incorporation activities can be taken into account in the jurisdictional analysis, but only where the corporation ratifies those activities post-incorporation. *See Rees v. Mosaic*

---

[2] Defendant Bernstein's declaration does not dispute these allegations, but clarifies that Music Lifeboat receives "charitable contributions via its fiscal sponsor, the Pasadena Arts Council." (Bernstein Decl. ¶ 7.) These charitable contributions do not come from the Pasadena Arts Council itself; rather the Pasadena Arts Council "receives and processes donations directed to Music Lifeboat, allowing contributors to make tax-deductible donations." *Id.* Furthermore, the Pasadena Arts Council "does not direct or control any operations of Music Lifeboat," "was not consulted regarding the publication of the Music Lifeboat website," or any of the mobile apps. *Id.*

*Technologies, Inc.*, 742 F.2d 765, 768–69 (3d Cir. 1984). Here, Music Lifeboat did *not* ratify the agreement between Bernstein, Loring, and Carter to give plaintiff 10% of the company, and its failure to do so is the basis of plaintiff's breach of contract claim. (Am. Compl. ¶ 61.) Plaintiff also alleges that the sustained period of communication with Bernstein, Carter, and Loring, which began in January of 2014, lasted for approximately nine months. (Am. Compl. ¶¶ 32, 42.) Music Lifeboat was therefore not incorporated until after this period had ended. Music Lifeboat's involvement seems limited to the fact that it is a company which distributes plaintiff's copyrighted content, which was created in New York, before Music Lifeboat was ever incorporated. Music Lifeboat, then, has not "transacted business" in New York.

### 2. Jurisdiction Based on Continuing Operation of the Music Lifeboat Website and Associated Mobile Apps

Plaintiff's second proffered basis for jurisdiction under section 302(a)(1) is insufficient as to all defendants. Mere availability of a website "to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp.2d 410, 418 (S.D.N.Y. 2009); *accord. Pearson Educ., Inc. v. Yi Shi*, 525 F.Supp.2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York."). In order for a website or mobile applications to serve as a basis for jurisdiction in New York, the website and/or apps must first be "interactive," as opposed to "passive." *Id.* at 418–19. A "passive" website "merely make[s] information available to viewers," while an "interactive" website "knowingly transmit[s] goods or services to users in other states." *Id.* at 418. Assuming that Music Lifeboat and its associated apps are not only available to, but interactive with, New York residents, that would still not be sufficient for personal jurisdiction unless defendants

"purposefully direct[ed] activity into [New York]—for example, by making sales of goods or services to New York residents." *Id.* at 418–19.

Plaintiff does not allege that any goods or services are sold through either musiclifeboat.com, or the Bandblast app.[3] Defendants admit that the Play Like a Prodigy series of apps does offer additional lessons that can be purchased in the apps. (Bernstein Decl. ¶ 11.) Plaintiff fails to allege, however, that any NY resident has in fact made an in-app purchase in one of the Play Like a Prodigy apps. (Am. Compl. ¶ 67) (alleging only that the apps are publicly available, not that anyone in New York has in fact paid to unlock content). Even if plaintiff had alleged "that transactions with New York residents occurred, [such allegations] would nonetheless be insufficient to support the further, necessary finding that defendants purposefully and knowingly entered into those transactions with New York residents or otherwise targeted New York for business." *Royalty Network*, 638 F. Supp.2d 420; *see also Yash Raj Films (USA) Inc. v. Dishant.com LLC*, 2009 WL 4891764 at *6 (E.D.N.Y. Dec. 15, 2009) ("Put simply, 'it stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state'—in the same way it can reach them everywhere else on Planet Earth— 'without some evidence or allegation that commercial activity in that state actually occurred or was actively sought.'") (quoting *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500898, at *7 (S.D.N.Y. June 23, 2005)).

---

[3] Defendants assert that they are not. (Bernstein Decl. ¶¶ 9–10.)

### B. CPLR § 302(a)(2)

Plaintiff asserts jurisdiction under CPLR § 302(a)(2) on the ground that defendants committed a tortious act within New York. The tortious act plaintiff identifies is copyright infringement. Defendants rely on a Second Circuit case, *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997), for the proposition that the tort of trademark infringement on the internet occurs where the website was created and maintained, which in this case would be California. *See also DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153 (RA), 2014 WL 496875, at *10-11 (S.D.N.Y. Feb. 5, 2014) ("in the case of websites displaying infringing marks the tort is deemed to be committed where the website is created and/or maintained") (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.2d 549, 567 (S.D.N.Y. 2000)). Plaintiff responds that defendants' citations are inapposite because they are to trademark cases, not copyright infringement cases, but plaintiff does not explain the relevance of this distinction. Plaintiff points out that copyright infringement is "a commercial tort that is 'deemed to take place at the point of consumer purchase.'" *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992) (quoting *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 1452, 1456 (S.D.N.Y. 1987)). This is also true, however, for trademark infringement, as the *Business Trends* decision cited in *Lipton* makes clear. 650 F. Supp. at 1455–56 ("Copyright infringement, violation of § 43(a) of the Lanham Act, violation of New York's anti-dilution statute, and the use of misappropriated trade secrets in the production or sale of a product are all commercial torts that are deemed to take place at the point of consumer purchase.").

The more relevant distinction between *Bensusan* and *Lipton* is that *Lipton* did not involve the internet; it involved retail sales in New York. Where a merchant sells a work that infringes on copyright to a consumer in person, personal jurisdiction would exist where that sale was made.

When the infringement occurs over the internet, however, *Bensusan* teaches that personal jurisdiction lies where the website is created. 126. F.3d at 29 ("The acts giving rise to Bensusan's lawsuit—including the authorization and creation of King's web site . . . were performed by persons physically present in Missouri and not in New York. Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2)."). Therefore, there is no jurisdiction over any defendant under this section of the long-arm statute.[4]

### C. CPLR § 302(a)(3)

Finally, plaintiff asserts jurisdiction under CPLR § 302(a)(3)(ii). In order for jurisdiction to attach under this provision, five elements must be met: (1) defendants committed a tortious act outside of New York; (2) plaintiff's claims arise from that act; (3) the act caused injury to a person or property within New York; (4) the consequences of the act in New York were reasonably foreseeable; and (5) defendants derive substantial revenue from interstate or international commerce. *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000). Defendants focus only on the fifth.

Plaintiff insists that defendants derive "substantial" revenue from interstate commerce because the *only* revenue Music Lifeboat derives from commerce is the revenue from all of its mobile applications. In determining whether revenue from interstate commerce is substantial, courts may look to the percentage of a party's overall revenue derived from interstate or foreign commerce, but courts may alternatively look to the absolute revenue generated by a defendant's

---

[4] Plaintiff also argues that nearly all of the content and computer code for the BandBlast app was written, developed, and/or created in New York. The creation of the content and computer code is not a tort, and it was not done by defendants. It is therefore not a basis for jurisdiction under this provision.

13

interstate commercial activities. *Light v. Taylor*, 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007). "Neither approach is binding on the court, as each case must be decided based on its own set of facts, [and there] is no specific dollar threshold at which revenue becomes 'substantial' for purposes of CPLR § 302(a)(3)(ii)." *Id.* Instead, "the main concern is the 'overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.'" *Id.*

First, there are no allegations that the Pasadena Arts Council derives any revenue from interstate commerce. Plaintiff does not allege that the revenue generated through the Play Like a Prodigy series of apps ever went to the Pasadena Arts Council, and the Bernstein declaration indicates that the revenue would go to Music Lifeboat. (Bernstein Decl. ¶ 12.) Therefore, this statute does not confer jurisdiction over defendant Pasadena Arts Council. But even with respect to Music Lifeboat, plaintiff does not allege how much absolute, or relative, revenue is generated by the Play Like a Prodigy apps, and merely alleges in a conclusory fashion that it is "substantial." Defendants assert that it is less than $3,000.00. (Bernstein Decl. ¶ 12.) While all factual disputes must be resolved in favor of plaintiff at this stage, plaintiff does not actually dispute this figure, and in fact adopts it in his motion papers. (Pl's Mem. at 9 (citing Bernstein Decl. ¶ 12).) That less than $3,000 in revenue was generated from in-app purchases through the Play Like a Prodigy apps, when considered with the overall nature of the defendant's business as a non-profit corporation, is insufficient to establish that Music Lifeboat "can fairly be expected to defend lawsuits in foreign forums." *See Light*, 2007 WL 274798 at *4.

Based upon the foregoing, this court has personal jurisdiction over defendants Bernstein, Carter, and Loring, but lacks personal jurisdiction over defendants Music Lifeboat and Pasadena Arts Council.

### III. Venue

A copyright action such as this "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "A defendant 'may be found' wherever that person is amenable to personal jurisdiction." *Cavu Releasing, LLC v. Fries*, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005). Because personal jurisdiction is lacking for two defendants, venue is therefore also improper as to the claims against those defendants. Under 28 U.S.C. § 1406(a), when a case lays venue in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The transferor court may transfer venue pursuant to § 1406(a) whether or not it has personal jurisdiction over defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).

As to the claims against the individual defendants, because they are amenable to personal jurisdiction in New York, venue is also proper as to the claims against them. Under 28 U.S.C. § 1404(a), however, even if venue in a particular district is proper, a court may nevertheless transfer a civil action to any other district where the case might have been brought, if the transfer would serve "the convenience of the parties and witnesses" and "the interests of justice."

Where venue is proper for one defendant but not for another, the district court may transfer the entire case to another district that is proper for both defendants, or it may sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district. 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3827 at 607–09 (3d ed.) (collecting cases). However, severing the claims and litigating the case piecemeal is disfavored when: (1) there is a venue that would be proper for all the defendants in which the entire case could be litigated at once, as there is here with California; and (2) the claims and parties are intertwined, as they are here, and the same issues and witnesses, who are located in both forums, are involved. *See, e.g., Flynn v. Greg Anthony Construction Co., Inc.*, 95 Fed. Appx. 726,

15

739 (6th Cir. 2003) (district court abused its discretion by dismissing the claims against some defendants while transferring the remainder of the action, because the transferee forum had the most significant connections to the case and had personal jurisdiction over all of the defendants); *Sunbelt Corp. v. Noble, Denton & Assocs., Inc*, 5 F.3d 28, 33–34 (3d Cir. 1993) (courts "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places."); *Valentine v. Sonthineni*, 01 CV 1656 (JMM), 2002 WL 31641376 at *4 (M.D. Pa. Oct. 15, 2002) ("Severance of the moving defendants would require plaintiffs' suit and the attendant cross-claims to be litigated in two districts at the same time. The complications involved in such a severance and transfer outweigh any potential benefits.").

In *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), *cert. denied*, 393 U.S. 977 (1968), the Court of Appeals for the Second Circuit affirmed the district court's decision to sever the claims against two defendants from the rest of the case, to keep them, and to transfer the remaining claims to another district. The circumstances in *Wyndham*, however, were unusual in that venue in the transferee forum would have been improper as to one of the defendants that the court elected to sever and in that the other defendant that the court severed was only indirectly connected to the main subject matter of the action. *Id.* at 618 ("a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action"). Here Music Lifeboat, as the company currently publishing plaintiff's copyrighted material, is integral to the main subject matter of the action, and venue in the transferee forum would be proper as to all defendants.

In sum, here, there is neither personal jurisdiction nor proper venue for the claims against Music Lifeboat and Pasadena Arts Council in this district. I therefore transfer the claims against Pasadena Arts Council and Music Lifeboat to the Central District of California pursuant to 28 U.S.C. § 1406(a). Rather than sever the remaining claims and have this case litigated simultaneously in two courts on opposite sides of the country, I also, pursuant to 28 U.S.C. § 1404(a), transfer the claims against the remaining defendants to the Central District of California.

## CONCLUSION

For the reasons discussed above, defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied. Defendants' motion in the alternative to transfer venue to the Central District of California is GRANTED. The Clerk of Court is directed to transfer this entire matter to the Central District of California.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: May 17, 2017
      Brooklyn, New York